***********
The Full Commission reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner and the briefs and arguments before the Full Commission. The appealing party has not shown good ground to reconsider the evidence, receive further evidence or to amend the prior Opinion and Award, except for minor modifications. The Full Commission therefore affirms the Opinion and Award of the Deputy Commissioner with minor modifications.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. The parties are bound by and subject to the North Carolina Workers' Compensation Act.
2. At all relevant times, an employment relationship existed between plaintiff and defendant.
3. Defendant is self insured and GAB Robins of North America, Inc. is the servicing agent.
4. Should this case be determined to be compensable plaintiff would receive the maximum compensation rate for 2001.
5. Plaintiff's medical records were stipulated into evidence as Stipulated Exhibit 1.
6. Plaintiff's contract with defendant was stipulated into evidence as Stipulated Exhibit 2.
7. A photograph of plaintiff's truck was stipulated into evidence as Stipulated Exhibit 3.
8. A copy of plaintiff's 2002 contract was stipulated into evidence as Stipulated Exhibit 4.
9. The issues before the Full Commission are: (i) whether plaintiff sustained an injury by accident arising out of and in the course of his employment with defendant on August 11, 2001; and (ii) if so, what compensation, if any, is due plaintiff?
 ***********
Based upon all the competent evidence of record and the reasonable inferences flowing therefrom, the Full Commission makes the following additional:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was married and had two (2) children. Plaintiff began his employment with defendant in May 2001.
2. Plaintiff received training in Wisconsin before returning to Wilmington and traveling throughout North Carolina, South Carolina and Georgia selling Snap-On tools.
3. Plaintiff's compensation was based upon his overall sales. Plaintiff received commission and benefits including health insurance.
4. Plaintiff's employment contract required plaintiff to obtain and maintain in good repair a vehicle for business use as specified by the company.
5. Plaintiff purchased a truck depicted in Stipulated Exhibit 3, which displayed the Snap-On logo. This truck served as a mobile office and display room for defendant's business.
6. Plaintiff was responsible for keeping the truck in good repair. Supervisors emphasized at sales meetings and in conversations that the truck should be neat and clean.
7. Kyle Ferguson, plaintiff's supervisor, referenced plaintiff's truck in employee meetings in Charlotte and challenged other employees to keep their truck in a similar fashion as plaintiff's truck.
8. Plaintiff would use his home office to complete paper work, prepare invoices, do accounting, and other tasks associated with the sales for defendant.
9. Plaintiff spent time during the week on the road selling merchandise. On weekends, plaintiff would maintain his truck and clean it.
10. Plaintiff's truck was approximately ten to twelve feet in height and plaintiff would use a step stool and a brush on a long handle to wash the truck. When washing the windshield, plaintiff would stand on the front tires and use the brush to clean the center of the windshield.
11. On August 11, 2001, plaintiff was washing the right front windshield of his truck in the driveway of his home. Plaintiff's wife and children had gone shopping and plaintiff was working alone. While plaintiff was standing on the front tire and using the long handled brush, his foot slipped off the tire and he fell backwards onto the concrete driveway.
12. When plaintiff fell, plaintiff hit his back on the concrete causing him to fold in a forward direction. Plaintiff felt pain immediately in his lower back and was unable to work the remainder of the weekend or the first part of the following week. Plaintiff attempted to use bed rest and a heating pad to resolve his pain.
13. On Monday following the accident, plaintiff called his supervisor, Kyle Ferguson, and informed him he had fallen from the truck.
14. Plaintiff followed up with Mr. Ferguson two days later to let him know he was still going to try to work on Thursday and Friday. At that time, plaintiff felt he had probably pulled a muscle and thought it would resolve.
15. Plaintiff remained in contact with Mr. Ferguson concerning his back pain over the next five months.
16. On Wednesday, August 15, 2001, plaintiff went to Wilmington Health Associates to receive medical treatment for his back. Plaintiff was seen by a physician's assistant who scheduled an MRI at New Hanover Regional Medical Center the following day and instructed plaintiff to see an orthopedic surgeon.
17. The MRI indicated a moderately large central disc herniation at L4 level with facet hypertrophy, which caused moderate lateral stenosis at L4-5 level.
18. Plaintiff was referred to Patrick Curlee, M.D., an orthopedic surgeon, at Carolina Sports Medicine. Dr. Curlee indicated plaintiff had developed these symptoms as result of slipping off the front tire of his truck. Dr. Curlee prescribed physical therapy and a series of lumbar epidural steroid injections with Dr. Crowl.
19. Plaintiff began physical therapy on September 14, 2001, and attended six sessions.
20. Plaintiff received no further treatment for his back after October 1, 2001.
21. Though plaintiff continued to discuss his back problems with his supervisors, he received no assistance in processing his claim for workers' compensation.
22. Plaintiff's supervisors failed to make a timely filing of an accident report or proper documentation relating to this case. No documentation was filed with the North Carolina Industrial Commission until May 8, 2002.
23. Plaintiff ended his employment with defendant on February 27, 2002, in frustration concerning his supervisors' refusal to follow through with filing necessary paper work about his accident. Plaintiff did talk to a claim representative and realized at such time that no paper work had been filed.
24. Plaintiff's employment contract as well as representations that were made by his supervisors required employees to keep their trucks in neat and good working order.
25. Defendant benefited by plaintiff's keeping his truck in immaculate condition.
26. Plaintiff suffered a compensable specific incident of the work assigned arising out of and in the course of his employment with defendant on August 11, 2001, when he slipped and fell while washing his Snap-On truck.
27. This appeal to the Full Commission was brought by the insurer and by this Opinion and Award the Industrial Commission orders the insurer to make or to continue payments of benefits, including compensation for medical expenses, to the injured employee. The Full Commission determines that the cost to the injured employee of such hearing or proceedings, including therein a reasonable attorney's fee to be determined by the Commission, shall be paid by the insurer as a part of the bill of costs and that such reasonable attorney fee is $500.00.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission reaches the following additional:
 CONCLUSIONS OF LAW
1. On August 11, 2001, plaintiff sustained a specific traumatic incident of the work assigned arising out of and in the course of his employment with defendant. N.C. Gen. Stat. § 97-2(6).
2. Defendant received actual notice as to plaintiff's injury when plaintiff telephoned his supervisors as well as continued to follow up with his supervisors relating to his problems with his back. N.C. Gen. Stat. § 97-22.
3. As result of his compensable injury by accident on August 11, 2001, plaintiff is entitled to receive medical treatment for his back. N.C. Gen. Stat. § 97-25.
4. There was insufficient evidence from which to make a finding that defendant missed more than three days of work and suffered concomitant loss of commission-based income. Thus, based upon this record, plaintiff is not entitled to compensation for lost wages. N.C. Gen. Stat. §97-28.
5. The Industrial Commission, in its discretion, is empowered to order the defendant to pay plaintiff's costs of appeal, including reasonable attorney fees, as part of the bill of costs. N.C. Gen. Stat. § 97-88.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendant shall pay all medical expenses resulting from plaintiff's compensable injury by accident on August 11, 2001 in accordance with the Industrial Commission Medical Fee Schedule.
2. Defendant shall pay the costs, including a $500.00 attorney fee to plaintiff's counsel.
This 11th day of September 2003.
 S/_____________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER
 S/_____________ PAMELA T. YOUNG COMMISSIONER